Daniel McLaughlin (SBN: 315326)
    dmclaughlin@cja.org
Cole Newcomb (SBN: 365455)
    cnewcomb@cja.org
CENTER FOR JUSTICE AND
ACCOUNTABILITY
268 Bush St #3432
San Francisco, CA 94104
(415) 544-0444

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANSSAF ALI MAYO,<br><br>     Plaintiff,<br><br>     v.<br><br><br>ABRAHAM GOLAN,<br>ISAAC GILMORE, and<br>DALE COMSTOCK,<br><br>     Defendants. | Case No. 25CV3651-LL-AHG<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT COMSTOCK'S MOTION TO DISMISS** |

25cv3651

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................... 1

RELEVANT FACTS ................................................................................................ 2

LEGAL STANDARDS............................................................................................. 4

ARGUMENT ............................................................................................................ 5

    I.    The Court Has Personal Jurisdiction Over Defendant. ......................... 5

        A.    Defendant Has Sufficient Minimum Contacts with the Forum to Establish Specific Jurisdiction.................................... 5

            1.    Defendant's Conduct Satisfies Both Purposeful Availment and Purposeful Direction. .............................. 6

                a.    Defendant Purposefully Availed Himself of the Forum................................................................. 7

                b.    Defendant Purposefully Directed His Activities at the Forum. .............................................. 10

            2.    Defendant's Forum-Related Contacts Arise out of and Relate to Plaintiff's Claims. ..................................... 11

            3.    Defendant Fails to Show that Jurisdiction is Unreasonable.......................................................... 12

    II.    The Court Has Subject Matter Jurisdiction Over Plaintiff's Alien Tort Statute Claims.......................................................... 14

    III.    Plaintiff's California State Law Claims Are Timely. ........................... 19

        A.    California Civil Procedure Code § 354.8 Extended the Statute of Limitations for Plaintiff's Tort Claims to December 29, 2025. ..................................................... 19

            1.    Under California Law, an Extension of a Statute of Limitations is Applicable to Claims Whose Previous Statute of Limitations is Still Pending, Unless Expressly Excepted. ........................................... 20

            2.    The Presumptive Rule Applies Here.............................. 21

    IV.    In the Alternative, Plaintiff Requests Leave to Amend His Complaint. .................................................................... 25

i

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abreu v. Ramirez*,
   284 F. Supp. 2d 1250 (C.D. Cal. 2003) ...........................................................25

*Akbar v. Blinken*,
   No. 23CV1054-LL-BLM, 2023 WL 8722119 (S.D. Cal. Dec. 18,
   2023) ...............................................................................................................5

*Al Shimari v. CACI Premier Tech., Inc.*,
   170 F.4th 162 (4th Cir. 2026) ........................................................................16

*Al Shimari v. CACI Premier Tech., Inc.*,
   684 F. Supp. 3d 481 (E.D. Va. 2023) ....................................................... 18, 19

*Am. GNC Corp. v. GoPro, Inc.*,
   No. 18-CV-00968-BAS-BLM, 2018 WL 6074395 (S.D. Cal. Nov.
   6, 2018) .............................................................................................................6

*Andonagui v. May Dep't Stores Co.*,
   27 Cal. Rptr. 3d 145 (Cal. Ct. App. 2005) .....................................20, 21, 23, 25

*Ayla, LLC v. Alya Skin Pty. Ltd.*,
   11 F.4th 972 (9th Cir. 2021) ..........................................................................12

*Ballard v. Savage*,
   65 F.3d 1495 (9th Cir. 1995) ...........................................................................4

*Bocanegra v. Ayers*,
   66 F. App'x 110 (9th Cir. 2003) .....................................................................15

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 582 U.S. 255 (2017) ...................11

*Broam v. Bogan*,
   320 F.3d 1023 (9th Cir. 2003) .......................................................................25

*Creative Realty Partners, Inc. v. Michaelson Real Est. Grp., LLC*,
   No. 220CV03693MWFMRW, 2022 WL 16935330 (C.D. Cal. Sept.
   13, 2022) ...........................................................................................................9

ii

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014)............................................................................5

*Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*,
   557 F.2d 1280 (9th Cir. 1977) ........................................................13

*Doe I v. Cisco Sys., Inc.*,
   73 F.4th 700 (9th Cir. 2023) ............................................ 16, 17, 18

*Doe v. Deutsche Lufthansa*,
   157 F.4th 1103 (9th Cir. 2025) ................................................*passim*

*Doe v. Drummond Co.*,
   782 F.3d 576 (11th Cir. 2015) ..................................................16, 18

*Douglas Aircraft Co. v. Cranston*,
   374 P.2d 819 (Cal. 1962) ................................................................21

*Eminence Cap., LLC v. Aspeon, Inc.*,
   316 F.3d 1048 (9th Cir. 2003) ......................................................25

*Fed. Deposit Ins. Corp. v. Ultra Escrow, Inc.*,
   No. SACV111012AGMLGX, 2012 WL 12953088 (C.D. Cal. Oct.
   15, 2012) ..........................................................................................8

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
   592 U.S. 351 (2021).........................................................................11

*Freestream Aircraft (Berm.) Ltd. v. Aero L. Grp.*,
   905 F.3d 597 (9th Cir. 2018) ....................................4, 10, 11, 12, 13

*Garcia v. McCutchen*,
   940 P.2d 906 (Cal. 1997) ................................................................24

*Holland Am. Line Inc. v. Wartsila N. Am., Inc.*,
   485 F.3d 450 (9th Cir. 2007) ...........................................................5

*Humphrey v. Prince of Peace Baptist Church*,
   No. C07-02790 WHA, 2007 WL 4249853 (N.D. Cal. Nov. 30,
   2007) ..................................................................................................8

*Impossible Foods Inc. v. Impossible X LLC*,
   80 F.4th 1079 (9th Cir. 2023) ..........................................................9

*Int'l Shoe Co. v. Washington*,
   326 U.S. 310 (1945) ...................................................................................... 5

*Jan v. People Media Project*, 783 F. Supp. 3d 1300, 1311 (W.D. Wash.
   2025) ...................................................................................... 17, 19

*Jane W. v. Thomas*,
   560 F. Supp. 3d (E.D. Pa. 2021) .................................................................. 18

*KFC W., Inc. v. Meghrig*,
   28 Cal. Rptr. 2d 676 (Cal. Ct. App. 1994) ........................................................ 10

*Kiobel v. Royal Dutch Petroleum Co.*,
   569 U.S. 108 (2013) (Breyer, J., concurring) ..................................................... 18

*Landgraf v. USI Film Prods.*,
   511 U.S. 244 (1994) ...................................................................................... 22

*Martensen v. Koch*,
   942 F. Supp. 2d 983 (N.D. Cal. 2013) .......................................................... 10, 11

*Moreno v. Porterville*,
   No. 1:21-cv-00865-JLT-BAM, 2022 WL 14128245 (E.D. Cal. Oct.
   24, 2022) ...................................................................................... 25

*Mudd v. McColgan*,
   183 P.2d 10 (Cal. 1947) ............................................................... 20, 21, 22, 25

*Mwani v. Bin Laden*,
   947 F. Supp. 2d 1 (D.D.C. 2013) ................................................................. 17

*Nestlé USA v. Doe*, 593 U.S. 628 (2021) ............................................................. 17

*Paccar International, Inc. v. Commercial Bank of Kuwait, S.A.K.*,
   757 F.2d 1058 (9th Cir. 1985) ..................................................................... 10

*People v. Chadd*,
   621 P.2d 837 (Cal. 1981) ............................................................................ 24

*Picot v. Weston*,
   780 F.3d 1206 (9th Cir. 2015) ....................................................................... 8

*Pinkerton v. United States*,
   328 U.S. 640 (1946) .................................................................................... 18

iv

25cv3651

*Quarry v. Doe I,*
  272 P.3d 977 (Cal. 2012) ................................................................................ 24

*Russell v. United States,*
  278 U.S. 181 (1929) ........................................................................................ 22

*Salim v. Mitchell,*
  268 F. Supp. 3d 1132 (E.D. Wash. 2017) .................................................. 17, 18

*Silk v. Bond,*
  65 F.4th 445 (9th Cir. 2023) ..................................................................... 12, 14

*The Nvme Grp., Inc. v. Halverson,*
  No. 2:23-CV-01453-TLN-CKD, 2024 WL 2722635 (E.D. Cal. May
  28, 2024) ........................................................................................................... 9

*Uhlig v. Fairn & Swanson Holdings, Inc.,*
  No. 20-CV-00887-DMS-MSB, 2020 WL 6872881 (S.D. Cal. Nov.
  23, 2020) ........................................................................................................... 4

*United States v. Soto-Barraza,*
  947 F.3d 1111 (9th Cir. 2020) ....................................................................... 15

*United States v. Washington,*
  106 F.3d 983 (D.C. Cir. 1997) ................................................................... 15, 16

*United States v. Washington,*
  653 F.3d 1251 (10th Cir. 2011) ..................................................................... 15

*Walden v. Fiore,*
  571 U.S. 277 (2014) .......................................................................................... 5

*Wixen Music UK Ltd. v. Transparence Ent. Grp. Inc.,*
  No. 2:21-CV-02663-ODW, 2021 WL 6065690 (C.D. Cal. Dec. 22,
  2021) ............................................................................................................... 13

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme,*
  433 F.3d 1199 (9th Cir. 2006) ...................................................................... 6, 9

*Yamashita v. LG Chem, Ltd.,*
  62 F.4th 496 (9th Cir. 2023) ...................................................................... 11, 12

v

**International Cases**

*Prosecutor v. Ognwen*, ICC-02/04-01/15, Sentence, ¶ 171 (May 6, 2021), https://www.legal-tools.org/doc/vj1y8k/pdf/........................................ 15

*Prosecutor v. Ali Muhammad Ali Abd-Al-Rahman*, ICC-02/05-01/20, Judgement, ¶¶ 934, 936, 996 (Oct. 6, 2025), https://www.icc-cpi.int/sites/default/files/CourtRecords/0902ebd180cb3b4e.pdf ...................... 15

**Statutes**

Cal. Civ. Code § 1584 ............................................................................. 7, 8

Cal. Civ. Code § 1622 ................................................................................. 7

Cal. Civ. Proc. Code § 335.1 ............................................................... 20, 23

Cal. Civ. Proc. Code § 354 ....................................................................... 20

Cal. Civ. Proc. Code § 354.8 ............................................................*passim*

Rome Statute, art. 25(3)(f), July 1, 1998, 2187 U.N.T.S. 3 ..................... 16

**Other Authorities**

Cal. Const. art. IV, § 8(c) .......................................................................... 20

Fed. R. Civ. Proc. 15(a) ............................................................................ 25

Fed. R. Civ. Proc. 12(b) .......................................................................... 4, 5

Fed. R. Civ. Proc. 4(k)(2) ........................................................................... 5

vi

25cv3651

**INTRODUCTION**

Plaintiff Anssaf Ali Mayo ("Plaintiff") brings this action to hold three individuals—Defendants Dale Comstock ("Comstock" or "Defendant"), Isaac Gilmore ("Gilmore") and Abraham Golan ("Golan") (collectively, the "Defendants")—accountable for their assassination attempt on his life. Each of the Defendants has publicly admitted that they attempted to kill Plaintiff as part of their U.S.-based agreement to carry out extrajudicial killings in Yemen for-hire.

Plaintiff's Complaint was properly served on Comstock, Gilmore, and Golan, and service became effective on February 11, 2026, March 29, 2026, and March 27, 2026, respectively. *See* Dkt. No. 7-2; Dkt. No. 7-3; Dkt. No. 9-3. To date, Gilmore and Golan have not answered Plaintiff's Complaint.[1] Comstock moved to dismiss the Complaint arguing that this Court lacks personal jurisdiction over him, that the Court lacks subject matter jurisdiction over Plaintiff's Alien Tort Statute claims, and that Plaintiff's California state law tort claims are time-barred.

Comstock identifies no valid grounds to dismiss the Complaint. First, this Court has specific personal jurisdiction over Comstock because he both purposefully availed himself of California and purposefully directed his activities at the forum. Second, this case presents a permissible domestic application of the Alien Tort Statute given that Defendants agreed to, planned, and took substantial steps toward Plaintiff's assassination attempt in the United States, such that this court has subject matter jurisdiction over the claims. Third, California Civil Procedure Code § 354.8 extended the statute of limitations for claims that had still-pending statutes of limitation on January 1, 2016. Because the statutes of limitation were still pending

---

[1] Golan's deadline to answer was April 17, 2026. Gilmore's deadline to answer was April 19, 2026. Plaintiff is filing for an entry of default against Defendants Golan and Gilmore concurrently with his Opposition to Defendant Comstock's Motion to Dismiss.

1

on Plaintiff's California state law claims on that date, his claims were still timely when his Complaint was filed on December 23, 2025.

Accordingly, Comstock's motion should be denied in its entirety.

## RELEVANT FACTS

While living in San Diego, California, Golan founded Spear Operations Group ("Spear"), a private military contractor company. Dkt. No. 1, Compl. ¶¶ 2, 49. Golan then recruited Gilmore, a U.S. citizen and resident and a former member of the U.S. military, who joined Spear as its chief operating officer in October 2015. Compl. ¶¶ 2, 50. Both Golan and Gilmore resided in or near San Diego, California, which they used as a base for their operation. Compl. ¶ 3.

Golan and Gilmore reached an agreement with the U.A.E. that Spear would carry out an assassination program on the U.A.E.'s behalf targeting Yemeni leaders who opposed the U.A.E.'s interests in Yemen. Compl. ¶¶ 5, 52. In exchange, Spear would receive $1.5 million per month, with bonuses for successful assassinations. Compl. ¶¶ 5, 52. While in the United States, Golan and Gilmore recruited other U.S. based individuals to join Spear. Compl. ¶ 53. They specifically recruited former members of the U.S. military, whose U.S. military training and experience were key selling points in the pitch to the U.A.E. Compl. ¶ 54.

Comstock is a U.S. citizen and a former member of the U.S. military. Compl. ¶ 24. Comstock is currently a U.S. resident. Dkt. No. 6, Affidavit of Dale Comstock ¶ 2 ("Comstock Aff."). In or around December 2015, Comstock flew to San Diego, California so he could meet with Golan in person to discuss joining Spear. Compl. ¶ 57. During the meeting, which was held at Golan's San Diego home, Golan informed Comstock about Spear's targeted assassination program in Yemen on behalf of the U.A.E. Compl. ¶ 58. Golan asked Comstock to serve as the head of the targeted assassination program. Compl. ¶ 58; Comstock Aff. ¶ 3 ("In December 2015, I travelled to San Diego, California to meet with Abraham Golan at his request. I had one meeting with Mr. Golan in California during which I was

2

extended an offer to perform work for him outside of the United States."). At the conclusion of the meeting, Golan put $40,000 on the table. Compl. ¶ 58. Comstock took the money, accepted the position, and agreed to participate in the assassination program. Compl. ¶ 58. Going forward, Spear paid Comstock an additional $40,000 per month plus bonuses to run the targeted assassination program. Compl. ¶ 59.

Following the agreement in California, Defendants recruited approximately a dozen other individuals to join the Spear assassination team. Compl. ¶ 10. On December 14, 2015, Defendants gathered in person with the rest of the Spear assassination team, approximately a dozen total members, near Teterboro Airport in New Jersey. There, Golan, detailed the targeted assassination program they would be carrying out in Yemen. Each of the participants was told that, if they were no longer interested, they could keep the $20,000 advance payment they had already received and leave with no questions asked. None of the participants quit. They all, including each of the Defendants, agreed to proceed with the targeted killings in Yemen. Compl. ¶ 60.

The Spear assassination team then packed military equipment, including body armor, communications gear, and specialized tools to prepare blasting caps on explosives, which they brought with them to Yemen. Compl. ¶ 61. This same equipment was used in carrying out assassinations in Yemen, including Plaintiff's assassination attempt on December 29, 2015. Compl. ¶ 62.

On December 15, 2015, the Spear Assassination Team boarded a chartered plane from Teterboro Airport in New Jersey and flew to the U.A.E. and then ultimately onto Aden in Yemen, where they arrived on or about December 16, 2015. Compl. ¶ 12.

Following their arrival in Yemen, Golan and Gilmore continued to recruit former members of the U.S. military based in the U.S., a number of whom later traveled to Yemen and integrated into the Spear assassination team. Compl. ¶ 63. The U.A.E. transferred funds to Spear and Golan's U.S. bank accounts for the work

3

of the Spear assassination team in Yemen, who in turn transferred funds to the U.S. bank accounts of members of the Spear assassination team for the killings carried out in Yemen. Compl. ¶¶ 64-65.

Once in Yemen, the Spear assassination team undertook its campaign of assassinations and was, according to Comstock and Golan, responsible for several high-profile assassinations in Yemen. Compl. ¶¶ 70-79. At the top of the kill list was Plaintiff Anssaf Ali Mayo, a civilian who was a member of Yemen's House of Representatives and the Chairman of the al-Islah party in Aden, Yemen's second-largest political party. Compl. ¶¶ 14, 81.

At all relevant times, Spear continued to contract with U.S.-based individuals and businesses to support its work on behalf of the U.A.E. Compl. ¶¶ 66-67.

Each of the Defendants, including Comstock, has publicly admitted that they agreed to and then jointly carried out targeted assassinations in Yemen, including the attempt on Plaintiff. Compl. ¶¶ 15, 18-19, 80-82.

**LEGAL STANDARDS**

To defeat a Rule 12(b)(2) dismissal for lack of personal jurisdiction, the plaintiff need only identify "facts that if true would support jurisdiction." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). The court may consider affidavits alongside allegations in the complaint when ruling on a 12(b)(2) motion to dismiss for lack of personal jurisdiction. *Uhlig v. Fairn & Swanson Holdings, Inc.*, No. 20-CV-00887-DMS-MSB, 2020 WL 6872881, at *2 (S.D. Cal. Nov. 23, 2020). However, uncontroverted allegations in the complaint must be taken as true, and any factual disputes must be resolved in plaintiff's favor. *Freestream Aircraft (Berm.) Ltd. v. Aero L. Grp.*, 905 F.3d 597, 602 (9th Cir. 2018).

In considering a defendant's facial attack to the Court's subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) or a motion to dismiss under Rule 12(b)(6), the Court must assume all allegations in the complaint are true and draw all reasonable inferences in the plaintiff's favor. *Doe v. Holy See*, 557 F.3d

4

1066, 1073 (9th Cir. 2009) (12(b)(1)); *Akbar v. Blinken*, No. 23CV1054-LL-BLM, 2023 WL 8722119, at *3 (S.D. Cal. Dec. 18, 2023) (quoting *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008)) (12(b)(6)).

**ARGUMENT**

**I.     The Court Has Personal Jurisdiction Over Defendant.**

Specific jurisdiction "aris[es] out of or relate[s] to the defendant's contacts with the forum," rather than from a federal court's exercise of general jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Helicopteros Nacionales De Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8 (1984)). Application of specific jurisdiction is a fact-based inquiry that considers the defendant's relationship with the forum and the subject of litigation. *Walden v. Fiore*, 571 U.S. 277, 283 (2014). An exercise of specific jurisdiction must comport with the forum state's long-arm statute and the U.S. Constitution's due process requirements. *Daimler AG*, 571 U.S. at 125. California's long-arm statute is coextensive with the U.S. Constitution's due process requirements, thus only an analysis under the latter is required. *Doe v. Deutsche Lufthansa*, 157 F.4th 1103, 1110 (9th Cir. 2025).

**A. Defendant Has Sufficient Minimum Contacts with the Forum to Establish Specific Jurisdiction.**

The U.S. Constitution allows a court's exercise of specific jurisdiction where a non-resident defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).[2] Courts in the Ninth Circuit apply a three-prong test to assess this requirement:

---

[2] In the Complaint, Plaintiff asserted that personal jurisdiction over Comstock was proper under Fed. R. Civ. Proc. 4(k)(2). Plaintiff does not proceed under this theory because Comstock was personally served in Florida. *See Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 461-62 (9th Cir. 2007). Plaintiff is not limited to theories of personal jurisdiction cited in the complaint. *See*, *e.g.*, *Am.*

5

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Deutsche Lufthansa*, 157 F.4th at 1110.

Once the plaintiff satisfies the first two prongs of this test, the burden shifts to the defendant to "present a 'compelling case'" that asserting specific jurisdiction would not be reasonable. *Id.* at 1113.

## 1. Defendant's Conduct Satisfies Both Purposeful Availment and Purposeful Direction.

The first prong of the minimum contacts analysis can be satisfied by considering either purposeful availment, purposeful direction, or "some combination thereof." *Deutsche Lufthansa*, 157 F.4th at 1110-11; *see also Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006).

> At the end of the day, the purposeful direction and availment tests simply frame [the] inquiry into the defendant's "purposefulness" vis-à-vis the forum state, ensuring that defendants are not "haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts."

*Deutsche Lufthansa*, 157 F.4th at 1111 (citations omitted). Here, Comstock's contacts with California satisfy both tests, although Plaintiff only need satisfy one of them.

---

*GNC Corp. v. GoPro, Inc.*, No. 18-CV-00968-BAS-BLM, 2018 WL 6074395, at \*4 (S.D. Cal. Nov. 6, 2018).

6

25cv3651

### a. Defendant Purposefully Availed Himself of the Forum.

A prima facie showing that a defendant "purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there." *Deutsche Lufthansa*, 157 F.4th at 1110-11 (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)). The purposeful availment test is satisfied "where the defendant 'deliberately' has engaged in significant activities within a State, or has created 'continuing obligations' between himself and residents of the forum," because then the defendant "manifestly has availed himself of the privilege of conducting business" in the forum. *Deutsche Lufthansa*, 157 F.4th at 1110 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76 (1985)).

By his own admission, Comstock travelled to California for the purpose of meeting with Golan to entertain and receive an offer of employment. Comstock Aff. ¶ 3 ("In December 2015, I travelled to San Diego, California to meet with Abraham Golan at his request. I had one meeting with Golan in California during which I was extended an offer to perform work for him outside of the United States."); Compl. ¶¶ 57, 58. During this meeting, Golan, a California resident whose base of operation was in the forum, explained that Spear was going to carry out a targeted assassination program in Yemen on behalf of the U.A.E. Compl. ¶¶ 3, 58. Golan asked Comstock to serve as the head of the assassination program. Compl. ¶ 58. At the conclusion of the meeting, Golan put $40,000 on the table. Compl. ¶ 58. Comstock took the money, accepted the position, and agreed to participate in the assassination program, Compl. ¶ 58, thereby forming a contract and "continuing obligations" between the two.[3] *Deutsche Lufthansa*, 157 F.4th at 1110.

---

[3] Under California law, a contract may be oral or written. *See* Cal. Civ. Code § 1622; *see also* Cal. Civ. Code § 1584 ("Performance of the conditions of a

7

Following their December 2015 meeting, Comstock and Golan continued to work side by side as each carried out their agreement's respective terms. Comstock, along with Golan and Gilmore (also a California resident), recruited others to join the Spear assassination team. Defendants then traveled together to Yemen where they jointly carried out targeted killings. Comstock led the targeted killings, including the attempt on Plaintiff's life later that month. In exchange, Comstock was paid an additional $40,000 per month plus bonuses. Comstock's California contacts satisfy purposeful availment. *See Humphrey v. Prince of Peace Baptist Church*, No. C07-02790 WHA, 2007 WL 4249853 at *3 (N.D. Cal. Nov. 30, 2007) (finding purposeful availment where defendant entered California to offer employment to plaintiff, which was accepted verbally, and thus "created continuing relationships and obligations" with a California resident, despite entirety of contract performance being based outside the forum).

Comstock raises *Picot* to argue that his California-based contract and physical presence in the forum are insufficient to confer personal jurisdiction. Dkt. No. 6, Mot. to Dismiss Pls.' Compl. at ¶¶ 9-10 (citing *Picot v. Weston*, 780 F.3d 1206 (9th Cir. 2015)). However, *Picot* is easily distinguished.[4] Here, Comstock travelled to

---

proposal, or the acceptance of the consideration offered with a proposal, is an acceptance of the proposal."); *Fed. Deposit Ins. Corp. v. Ultra Escrow, Inc.*, No. SACV111012AGMLGX, 2012 WL 12953088 (C.D. Cal. Oct. 15, 2012) (finding acceptance of contract where defendant accepted payment and performed).

[4] In *Picot*, a California plaintiff traveled to Michigan, where defendant resided and where the parties negotiated and entered into an agreement. *Picot*, 780 F.3d at 1209-10. Aside from his interactions with the plaintiff, the defendant's only contacts with California were two trips he made to the forum after entering the contract, at the plaintiff's request. *Id.* at 1213. The court found that there was no purposeful availment where defendant's forum-related contacts were based solely on the plaintiff's unilateral actions and California residency. *Id.* at 1212-13. In contrast, Comstock traveled to California to negotiate and agree to an agreement with Golan, one of his co-Defendants. Neither Plaintiff's residency nor his actions played a role in Comstock's choice of forum.

8

California to learn about, negotiate over, and contract with a California resident for an assassination program he then agreed to, and in fact did, participate in. Compl. ¶¶ 57, 58, 60, 70-79, 80-81. Other courts have distinguished cases from *Picot* to find purposeful availment where, as here, a defendant traveled to the forum for the purpose of forming an agreement. *See, e.g.*, *Creative Realty Partners, Inc. v. Michaelson Real Est. Grp., LLC*, No. 220CV03693MWFMRW, 2022 WL 16935330, at *9 (C.D. Cal. Sept. 13, 2022) (distinguishing because defendant "traveled to California twice with the purpose of discussing a business relationship with a California company…[s]o here, [defendant]'s trips to California were not merely 'random, fortuitous, or attenuate' but '[r]ather, they helped form the basis of the parties' ultimate agreement.'") (citations omitted); *The Nvme Grp., Inc. v. Halverson*, No. 2:23-CV-01453-TLN-CKD, 2024 WL 2722635, at *3-4 (E.D. Cal. May 28, 2024) (finding purposeful availment where defendant's three-day trip into California, during which he formed an agreement and took a training, was "of central importance to Plaintiff's claims").

Comstock's contacts with California are anything but "random, fortuitous, or attenuated." *Deutsche Lufthansa*, 157 F.4th at 1111. "A single contact with the forum state may be sufficient to support jurisdiction if the action 'arise[s] out of that particular purposeful contact of the defendant with the forum state.'" *Impossible Foods Inc. v. Impossible X LLC*, 80 F.4th 1079, 1091 (9th Cir. 2023) (quoting *Yahoo! Inc.*, 433 F.3d at 1210). Comstock's travel to and agreement in California with a resident in the forum are directly tied to the claims giving rise to this action. Indeed, Comstock has admitted to carrying out Plaintiff's assassination attempt as part of his agreement to lead the Spear assassination team's work in Yemen. Compl. ¶¶ 15, 18-19, 80-82.

9

**b. Defendant Purposefully Directed His Activities at the Forum.**

Comstock's activities in California also satisfy the purposeful direction test. If part of a defendant's tortious conduct occurred in the forum, these contacts are sufficient to satisfy purposeful direction, even if the tortious conduct primarily occurred in another country. *Deutsche Lufthansa*, 157 F.4th at 1111 (finding purposeful direction where most of the tortious conduct occurred in Saudi Arabia, but some of defendant's conduct extended into California). The court need not qualify each harm-producing contact with the forum as wrongful or tortious; rather purposeful direction can be found based on an evaluation of "all of a defendant's contacts with the forum state, whether or not those contacts involve wrongful activity by the defendant." *Id*.

Tortious conduct "denotes that conduct, whether of act or omission, which subjects the actor to liability under the principles of the law of torts." *KFC W., Inc. v. Meghrig*, 28 Cal. Rptr. 2d 676, 685 (Cal. Ct. App. 1994). Comstock's tortious conduct began in California, where in a San Diego-based meeting, he agreed with others to engage in targeted killings, developed a plan and intent to execute an assassination program, and accepted money for such activity. Compl. ¶¶ 57, 58. In doing so, he formed the required tortious intent, as a perpetrator, co-conspirator, and aider and abettor of the violations detailed in the Complaint. *See* Section II *infra*.

Where, as here, a defendant committed a part of the tortious act in the forum, the Court need not apply an "effects" test that focuses on where the harm was felt. *Martensen v. Koch*, 942 F. Supp. 2d 983, 994 (N.D. Cal. 2013), *on reconsideration in part*, No. C-12-05257 JSC, 2013 WL 4734000 (N.D. Cal. Sept. 3, 2013) ("[T]he 'effects' test appears unnecessary where, as here, part of the alleged tort occurred in California.") (citing *Paccar International, Inc. v. Commercial Bank of Kuwait, S.A.K.*, 757 F.2d 1058, 1064 (9th Cir. 1985)); *see also Freestream Aircraft*, 905

10

F.3d at 606 ("where an intentional tort is committed within the forum state," the "proper starting place" is "*Paccar*, not *Calder*['s effect test]").

Under either the purposeful availment or purposeful direction test, or some combination thereof, Comstock's activities satisfy the first prong of the minimum contacts analysis.

### 2. Defendant's Forum-Related Contacts Arise out of and Relate to Plaintiff's Claims.

Comstock's forum-related contacts also satisfy the second prong of the minimum contacts analysis, which examines whether a plaintiff's claim "arise[s] out of or relate to the defendant's contacts" with California. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) (quoting *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 582 U.S. 255, 262 (2017)).[5] The Ninth Circuit has divided "arise out of" and "relate to" into two types of analysis. *Deutsche Lufthansa*, 157 F.4th at 1112. A claim arises out of a contact with a forum where the contact was the "but-for" cause of the claim. *Id*. "Relates to" requires that there is a "connection" between the plaintiff's claims and the defendant's contacts with the forum. *Id*. In the Ninth Circuit, acts are "sufficiently related to the plaintiff's injury," if "similar injuries will tend to be caused by those contacts"; "if the defendant should have foreseen the risk that its contacts might cause injuries like that of the plaintiff"; or

---

[5] The Court can find that Comstock's conduct automatically satisfies prong two of the minimum contacts analysis. Under *Paccar*, "the commission of an intentional tort in a state is a purposeful act that will satisfy the first two requirements [of the minimum contacts test]."). A defendant whose tortious conduct satisfies the purposeful direction test under prong one will thus also automatically meet the arises out of and relates to test under prong two. *Martensen*, 942 F. Supp. 2d at 994-95. Given that, as argued *supra*, Comstock committed tortious conduct in California sufficient to meet the purposeful direction test, the Court can find that his conduct also automatically satisfies the second prong of the minimum contacts test without engaging in further analysis.

11

25cv3651

there was "a close connection between contacts and injury." *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 505-06 (9th Cir. 2023).

Comstock's California contacts constitute a but-for cause of Plaintiff's harm given that without his California agreement Comstock would have not traveled to Yemen where he attempted to kill Plaintiff. Comstock's in-forum contacts also clearly relate to Plaintiff's injury under the *Yamashita* factors, since similar injuries would tend to be caused by the agreement to carry out targeted assassinations in Yemen, Comstock should have foreseen the risk that his agreement in California to carry out these assassinations might cause injuries like those of Plaintiff, and there was a close connection between his California meeting and Plaintiff's injuries.

### 3.   Defendant Fails to Show that Jurisdiction is Unreasonable.

If plaintiff establishes the first two prongs of the minimum contacts test, the burden shifts to the defendant to demonstrate that exercise of jurisdiction is unreasonable. *Freestream Aircraft*, 905 F.3d at 607. Defendant must "come forward with a 'compelling case' that the exercise of jurisdiction would not be reasonable." *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 979 (9th Cir. 2021) (quoting *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008)). In considering the defendant's case, the court applies a multi-factor balancing test, which includes:

> 1) the extent of the defendant's purposeful interjection into the forum state's affairs; 2) the burden on the defendant; 3) conflicts of law between the forum and defendant's home jurisdiction; 4) the forum's interest in adjudicating the dispute; 5) the most efficient judicial resolution of the dispute; 6) the plaintiff's interest in convenient and effective relief; and 7) the existence of an alternative forum.

*Silk v. Bond*, 65 F.4th 445, 457-58 (9th Cir. 2023).

Comstock cannot present a compelling case that personal jurisdiction in California is unreasonable. First, Comstock intentionally travelled to California and formed a business relationship with California residents, so the first factor weighs in favor of reasonableness. *See Freestream Aircraft*, 905 F.3d at 608 (jurisdiction not

12

25cv3651

unreasonable over Washington residents who traveled to Nevada to solicit business at a conference); Compl. ¶¶ 3, 57, 58. Second, while Comstock would have to travel to California to defend the case, he has not presented *any* evidence that the "inconvenience is so great as to constitute a deprivation of due process," and moreover, "modern advances in communication and transportation have significantly reduced the burden of litigating in another forum." *Freestream Aircraft*, 905 F.3d at 608 (citation modified). Third, there is little risk of conflicts of law given that most of Plaintiff's claims arise under Federal law. Fourth, Comstock conspired with California residents in California to commit war crimes, crimes against humanity, and extrajudicial killings. Compl. *passim*. California has a strong interest in regulating egregious conduct of this type, committed through in-forum activity and by its residents, and in exercising jurisdiction over claims arising from violations of law occurring within its borders. *See, e.g.*, *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1288 (9th Cir. 1977) ("A state has a special interest in exercising jurisdiction over those who have committed tortious acts within the state."). Fifth, witnesses and evidence in this case are dispersed across the U.S. and internationally, so this factor is not weighed heavily, given advances in travel and communications technology. *Freestream Aircraft*, 905 F.3d at 609. However, California also has jurisdiction over the other two defendants, Golan and Gilmore, rendering it a manifestly efficient forum for resolving Plaintiff's claims. Sixth, if Plaintiff's claims against Comstock were transferred, Plaintiff would have to litigate the same claims based on the same acts in two different courts, further burdening his pursuit of a remedy. *See Wixen Music UK Ltd. v. Transparence Ent. Grp. Inc.*, No. 2:21-CV-02663-ODW (MRWX), 2021 WL 6065690, at *5 (C.D. Cal. Dec. 22, 2021) (Plaintiff has an interest in convenient relief in California, which has jurisdiction over other California-based co-defendant, particularly since a ruling on jurisdiction that produces two parallel actions for the same claims would be inefficient for judicial resolution). Accordingly, the fifth and sixth factors weigh in

13

favor of Plaintiff. Finally, while Comstock has signaled towards a potential alternative forum in Florida (Comstock Aff. ¶ 2), and so the seventh factor could weigh in his favor, the availability of an alternative forum does not overcome the disposition of the other factors, which overwhelmingly weigh in favor of Plaintiff's choice of forum. *Silk*, 65 F.4th at 459.

## II.    The Court Has Subject Matter Jurisdiction Over Plaintiff's Alien Tort Statute Claims.

Comstock raises a limited challenge to Plaintiffs' Alien Tort Statute ("ATS") claims, wrongly arguing that because the killing was to occur outside the United States, this Court lacks subject matter jurisdiction over the U.S. citizen and resident perpetrator.

First, Comstock's motion fails to recognize that Counts 1 and 2 are based on conduct that took place within the United States and therefore his motion does not move to dismiss these Counts, which are not extraterritorial. Comstock took actions while in the U.S. that establish his liability as a direct perpetrator of Plaintiff's assassination attempt. *See* Compl. ¶ 105 (alleging that Comstock is responsible as a direct perpetrator for the claim of attempted murder as a war crime), ¶ 114 (alleging that Comstock is responsible as a direct perpetrator for the claim of attempted extrajudicial killing). As detailed *supra*, while in California, Comstock entered into an agreement with Golan to lead and carry out targeted assassinations in Yemen for which he accepted $40,000 cash plus additional payments of $40,000 per month plus bonuses. Comstock engaged in additional U.S.-related conduct. Comstock, along with the other Defendants, recruited approximately a dozen other individuals to join the Spear assassination team, including other former members of the U.S. military.

Following their agreement to proceed, Comstock and the Spear assassination team packed military equipment, including body armor, communications gear, and specialized tools to prepare blasting caps on explosives, which they brought with

14

them to Yemen. Two weeks later, on December 29, 2015, Comstock and the Spear assassination team used this same equipment in their attempt to kill Plaintiff.

Comstock's U.S.-based conduct renders this case a permissible domestic application of the ATS. On two separate occasions while in the U.S., Comstock agreed to kill the Spear assassination team's targets in Yemen, demonstrating that he had the requisite intent.[6] All these actions also constitute a "substantial step" toward committing the assassination attempt on Plaintiff and therefore satisfy elements of the First and Second Claims for Relief (Attempted Murder as a War Crime and Attempted Extrajudicial Killing). Compl. ¶¶101-119. *Cf. United States v. Soto-Barraza*, 947 F.3d 1111, 1121 (9th Cir. 2020) (finding a reasonable jury could find a "substantial step" towards robbery where defendants "equipped themselves with assault-style weapons (as well as packing food, water and ammunition) and traveled to an area where they expected to find the intended victims" and collecting similar cases).[7]

---

[6] *Bocanegra v. Ayers*, 66 F. App'x 110, 111-12 (9th Cir. 2003) (California court's finding that acts prior to actual killing was sufficient to show defendant's intent to kill was a proper application of federal law under Supreme Court precedent). *See also, e.g.*, *Prosecutor v. Ali Muhammad Ali Abd-Al-Rahman*, ICC-02/05-01/20, Judgement, ¶¶ 934, 936, 996 (Oct. 6, 2025), https://www.icc-cpi.int/sites/default/files/CourtRecords/0902ebd180cb3b4e.pdf (noting that in a prior operation, defendant instructed subordinates to "kill or wipe" all men and not women, which contributed to finding of requisite discriminatory intent.); *Prosecutor v. Ognwen*, ICC-02/04-01/15, Sentence, ¶ 171 (May 6, 2021), https://www.legal-tools.org/doc/vj1y8k/pdf/ (recalling that defendant's prior agreement to attack IDP camp with other perpetrators "demonstrates a high degree of intent on the part of Dominic Ongwen in the commission of the crime under consideration.")

[7] *See also United States v. Washington*, 653 F.3d 1251, 1266 (10th Cir. 2011) (holding that a defendant took a substantial step towards attempted murder-for-hire when he equipped himself with a pair of latex gloves to avoid fingerprints and traveled towards "a city in which he had no apparent business beyond the planned hit" with "the person who had facilitated the murder-for-hire agreement."); *United States v. Washington*, 106 F.3d 983 (D.C. Cir. 1997) (noting that defendants were

15

Second, Comstock took actions while in the United States that separately establish his responsibility for each of Plaintiff's ATS claims under two distinct theories of secondary liability: conspiracy,[8] and aiding and abetting.[9] *See* Compl. ¶¶ 107-108 (alleging that Comstock is responsible as a co-conspirator and as an aider and abettor for the claim of attempted murder as a war crime), ¶¶ 115-116 (alleging that Comstock is responsible as a co-conspirator and as an aider and abettor for the claim of attempted extrajudicial killing), and ¶¶ 125-126 (alleging that Comstock is responsible as a co-conspirator and as an aider and abettor for the claim of persecution as a crime against humanity). Conspiracy to commit an international law violation, and aiding and abetting such a violation, are distinct cognizable claims under the ATS. *Drummond*, 782 F.3d at 597 ("[C]laims based on aiding and abetting and conspiracy liability are cognizable under the ATS."); *see also CACI*, 170 F.4th at 182-83 (noting that Courts of Appeal are united in finding aiding and abetting

---

properly charged with attempted drug offense for agreeing to provide armed protection for drug dealers where they exhibited the requisite criminal intent and "had 'moved beyond preparation' and completed the 'requisite substantial step' toward committing that crime by accepting the money and by promising to protect the purported 'drug dealers.'"). Similarly, under international law, a person is liable and criminally responsible for an attempt to commit a crime where that person "[a]ttempts to commit such a crime by taking action that commences its execution by means of a substantial step, but the crime does not occur because of circumstances independent of the person's intentions." ICC Rome Statute, art. 25(3)(f), July 1, 1998, 2187 U.N.T.S. 3.

[8] Conspiracy liability is available and cognizable under the ATS. *See Al Shimari v. CACI Premier Tech., Inc.*, 170 F.4th 162, 182-83 (4th Cir. 2026); *Doe v. Drummond Co.*, 782 F.3d 576, 597-98 (11th Cir. 2015).

[9] Aiding and abetting is available and cognizable under the ATS. *Doe I v. Cisco Sys., Inc.*, 73 F.4th 700, 716-18 (9th Cir. 2023), *certiorari granted in part by Cisco Sys., Inc. v. Doe I*, No. 24-856, 2026 WL 73088 (mem.) (Jan. 9, 2026) (finding that the Ninth, Second, Fourth and Eleventh Circuits have all held that aiding and abetting liability claims may proceed under the ATS).

16

liability under the ATS and concluding, as a matter of first impression, that conspiracy is also proper under the statute).

A defendant's U.S.-based secondary liability conduct suffices to provide the Court with jurisdiction over an ATS claim, "'even if other conduct [*i.e.*, the principal's acts] occurred abroad[.]'" *Cisco*, 73 F.4th at 737 ((alteration in original) citing *Nestlé USA v. Doe*, 593 U.S. 628, 633 (2021)); *see also Jan v. People Media Project*, 783 F. Supp. 3d 1300, 1311 (W.D. Wash. 2025) (finding that defendants' actions in the United States, namely payments to an individual who committed violations abroad, were sufficient to provide the court with jurisdiction over plaintiffs' ATS claim for kidnapping); *Salim v. Mitchell*, 268 F. Supp. 3d 1132, 1150 (E.D. Wash. 2017) (jurisdiction under the ATS was proper where defendants engaged in U.S. conduct that contributed to torture carried out abroad); *Mwani v. Bin Laden*, 947 F. Supp. 2d 1, 5 (D.D.C. 2013) (jurisdiction exists for ATS claims based on alleged conspiracy planned, in part, in the United States).

Comstock's U.S.-based conduct demonstrates that he conspired to commit targeted killings in Yemen, including Plaintiff's assassination attempt. Comstock agreed with Golan and other members of the Spear assassination team that he would lead them in carrying out targeted killings in Yemen for money, with knowledge of the plan and the intent to accomplish their shared objective. Plaintiff's assassination attempt was carried out as part of this agreement and in furtherance of the conspiracy.

Comstock's U.S.-based conduct separately demonstrates that he also aided and abetted the violations of international law committed in Yemen by providing knowing substantial assistance to the Spear assassination team in their targeted killings, including the attempt on Plaintiff's life.

Nor is it relevant whether Comstock knew the Spear assassination team's targets' precise identities while in the United States. For accomplice liability under the ATS, "it is not necessary that the aider or abettor know the precise crime that was intended and was in fact committed—if the accused is aware that one of a

17

number of crimes will probably be committed, and one of those crimes is committed," the *mens rea* standard is satisfied. *Cisco*, 73 F.4th at 734 (citation modified); *see also Pinkerton v. United States*, 328 U.S. 640, 646-48, (1946) (holding that co-conspirators are liable for acts committed in furtherance of the conspiracy which were the natural and foreseeable consequence of the unlawful agreement).

Third, Defendants' U.S. citizenship and/or residency, along with the claims' overall connections to the United States, are additional factors that support the Court's exercise of jurisdiction. *Al Shimari v. CACI Premier Tech., Inc.*, 684 F. Supp. 3d 481, 494 (E.D. Va. 2023) ("Because the ATS's historical purpose was to provide a remedy for torts committed by U.S. nationals in violation of the law of nations, the identity of an ATS defendant and the claims' overall connections to the United States are relevant" to whether a court has jurisdiction.); *see also Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 127 (2013) (Breyer, J., concurring) (jurisdiction is proper where "the defendant is an American national, or (3) the defendant's conduct substantially and adversely affects an important American national interest, and that includes a distinct interest in preventing the United States from becoming a safe harbor (free of civil as well as criminal liability) for a torturer or other common enemy of mankind."); *Drummond*, 782 F.3d at 594 ("*Kiobel* implicitly supports that citizenship or corporate status may be relevant to whether a claim touches and concerns the territory of the United States"); *Jane W. v. Thomas*, 560 F. Supp. 3d at 877 (E.D. Pa. 2021) (holding that Defendant's residence in the United States was among the factors that supported jurisdiction under the ATS); *Salim*, 268 F. Supp. 3d at 1152. Comstock is a U.S. citizen and resident, as is Gilmore. Both are former members of the U.S. military, as were several members of the Spear assassination team. At all relevant times, Golan was a U.S. resident, who founded and incorporated Spear, a private military contractor company, in the United States.

Plaintiff's ATS claims are deeply intertwined with the United States and its interests, namely: (1) While in the United States, Golan and Gilmore repeatedly reached out to U.S.-based individuals to recruit them to join Spear; (2) Golan and Gilmore specifically recruited other former members of the U.S. military, whose U.S. military training and experience were key selling points in their pitch to prospective sovereign clients, including the U.A.E.; (3) Following their arrival in Yemen, Golan and Gilmore continued to recruit former members of the U.S. military based in the United States, a number of whom later traveled to Yemen and integrated into the Spear assassination team; (4) The U.A.E. transferred funds to Spear and Golan's U.S. bank accounts for the work of the Spear assassination team in Yemen, who in turn transferred funds to the U.S. bank accounts of members of the Spear assassination team for the killings carried out in Yemen, *People Media Project*, 783 F. Supp. 3d at 1311 (payments made from the United States a factor in finding ATS jurisdiction proper); (5) At all relevant times, Spear continued to enter into contracts governed by U.S. law with U.S.-based individuals and businesses to support its work on behalf of the U.A.E., *cf. CACI*, 684 F. Supp. 3d at 499 (domestic conduct relevant to ATS claims included the fact that services were rendered pursuant to a contract that was executed in the United States and provided for payment within the United States).

These acts, individually and collectively, amount to U.S.-connected conduct that allow this Court to exercise jurisdiction over Plaintiff's ATS claims.

**III.   Plaintiff's California State Law Claims Are Timely.**

**A. California Civil Procedure Code § 354.8 Extended the Statute of Limitations for Plaintiff's Tort Claims to December 29, 2025.**

For assaults and batteries that also constitute egregious human rights violations, California Civil Procedure Code § 354.8 extended the statute of limitations to ten years. Plaintiff has alleged that Defendants committed an assault and battery on December 29, 2015, that also constitute human rights violations

19

under § 354.8. The statute of limitations thus ran for ten years until December 29, 2025.[10] Plaintiff timely filed his claim on December 23, 2025. *See* Compl.

### 1. Under California Law, an Extension of a Statute of Limitations is Applicable to Claims Whose Previous Statute of Limitations is Still Pending, Unless Expressly Excepted.

It is well-settled law in California that an extension of the statute of limitations applies to claims accrued before the extension, where those claims were not time-barred when the new statute of limitations went into effect and where the extending statute does not expressly except such application. *Mudd v. McColgan*, 183 P.2d 10, 13 (Cal. 1947) ("It is the settled law of this state that an amendment which enlarges a period of limitation applies to pending matters where not otherwise expressly excepted."); *see also Andonagui v. May Dep't Stores Co.*, 27 Cal. Rptr. 3d 145, 148-49 (Cal. Ct. App. 2005). Defendants who could already be held liable under an existing statute of limitations are "deemed to suffer no injury" if the legislature expands the statute of limitations further. *Mudd*, 183 P.2d at 13.

Plaintiff's claims accrued on December 29, 2015, when Defendants attempted to kill him. While California Civil Procedure Code § 354.8 was enacted in October 2015, 2015 Ca. Legis. Serv. ch. 474 (West), it came into effect on January 1, 2016. *See* Cal. Const. art. IV, § 8(c) (regular session bills go into effect on January 1 following enactment). His claims thus accrued before the law went into effect.

On January 1, 2016, Plaintiff's claims for assault and battery were not time-barred. *See* Cal. Civ. Proc. Code § 335.1 (two-year statute of limitations for assault and battery). As a result, the original two-year statute of limitations was enlarged to ten years by the enactment of California Civil Procedure Code § 354.8. *See Mudd*, 183 P.2d 13.

---

[10] Plaintiff also has bases for tolling the statute of limitations. *See, e.g.*, Cal. Civ. Proc. Code § 354 (tolling during wartime). However, tolling is unnecessary here where Plaintiff timely filed his case.

20

25cv3651

## 2.  The Presumptive Rule Applies Here.

An expanded statute of limitations like California Civil Procedure Code § 354.8 applies to all pending claims that are not time-barred unless the legislature expressly provides otherwise. *See Mudd*, 183 P.2d at 13. The California Legislature authored no such express exception here, so the presumptive rule applies.

Comstock incorrectly argues that § 354.8(e) is such an express exception. In doing so, Comstock failed to elucidate the critical distinction between retroactive and prospective application of a statute of limitations. Comstock's reading of the statute, which ignores these key background principles, would render other subsections of § 354.8 meaningless.

A statute of limitations has retroactive effect when it revives a claim that is time-barred at the date of enactment. *Andonagui*, 27 Cal. Rptr. 3d at 148. Retroactive application of a statute of limitations "defeat[s]" a defendant's reliance interests. *See Douglas Aircraft Co. v. Cranston*, 374 P.2d 819, 822 (Cal. 1962) ("The keeping of records, the maintenance of reserves, and the commitment of funds may all be affected by such reliance, particularly in a well-organized enterprise that seeks to operate efficiently."). Courts therefore require "a clear indication of legislative intent" to retroactively apply a statute of limitations. *Andonagui*, 27 Cal. Rptr. 3d at 148 (quoting *Moore v. State Bd. of Control*, 5 Cal. Rptr. 3d 116, 121 (Cal. Ct. App. 2003)).

On the other hand, as previously explained, defendants do not suffer any injury nor lose out on a reliance interest when a new statute of limitations is applied to pending claims that are not time-barred at the time of enactment. *Douglas Aircraft Co.*, 374 P.2d at 822. After all, the defendant was already on the hook under an existing statute of limitations and extending that period "affects only the remedy and not a right." *Id.* (citing *Mudd*, 183 P.2d 10). Hence an enlarged statute of limitations is presumed to apply prospectively—meaning to pending claims not yet time-barred—absent contrary statutory indication. *Mudd*, 183 P.2d at 13; *see also*

21

25cv3651

*Landgraf v. USI Film Prods.*, 511 U.S. 244, 269-70 (1994) ("A statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment, or upsets expectations based in prior law. Rather, the court must ask whether the new provision attaches new legal consequences to events completed before its enactment." (citation omitted)).

Case law demonstrates a legislature needs to explicitly exclude pending claims to overcome the presumption that an amended statute of limitations has prospective application. The California Supreme Court identified one such statutory scheme in *Russell v. United States*, 278 U.S. 181 (1929), a case in which the U.S. Supreme Court considered the extension of a statute of limitations for assessing taxes. *Mudd*, 183 P.2d at 15. The relevant portion of the statute in *Russell* stated:

> This section shall not (1) authorize the assessment of a tax or the collection thereof by distraint or by a proceeding in court if at the time of the enactment of this Act such assessment, distraint, or proceeding was barred by the period of limitation then in existence, or (2) affect any assessment made, or distraint or proceeding in court begun, before the enactment of this Act.

278 U.S. at 184 (citation omitted). Subsection (1) codified the rule that amendments to statutes of limitations do not apply retroactively. *See id.* at 187. Subsection (2) had the "obvious design" to preclude "any possible application" to assessments pending prior to the statute's effective date. *Mudd*, 183 P.2d at 15. It was therefore an example of "an express exception" to the background, presumptive rule that an amended statute of limitations applies prospectively to pending matters that are not time-barred. *Id.* at 15.

With those background principles in mind, understanding § 354.8 becomes tractable. A plaintiff suing will fall in one of three categories:

1) Retroactive application: Plaintiff's claims were time-barred when § 354.8 went into effect on January 1, 2016.

22

25cv3651

2) Prospective application pre-enactment: Plaintiff's claims accrued before January 1, 2016, but were not time-barred when § 354.8 went into effect on January 1, 2016.

3) Prospective application post-enactment: Plaintiff's claims accrued on or after January 1, 2016.

The provisions of § 354.8, when read together, dictate what to do in each scenario.

In scenario one, retroactive application, § 354.8(e) is dispositive. It reads:

(e) This section shall apply to all actions commenced concerning an act described in paragraphs (1) to (4), inclusive, of subdivision (a), that occurs on or after January 1, 2016.

Section 354.8(e) codifies the background principle that a statute of limitations will apply prospectively not retroactively. *Andonagui*, 27 Cal. Rptr. 3d at 148. A plaintiff in scenario one is out of luck and their claim cannot be revived.

Section 354.8(e) could also apply to scenario three, to plaintiffs seeking post-enactment application. Subsection (e) clarifies that the extended ten-year statute of limitations takes effect on January 1, 2016, and will apply to any claims from that date forward.

For plaintiffs in scenario two, who have a claim that accrued before January 1, 2016, and whose claim was not time-barred on that date, a different section applies: § 354.8(b). It reads:

(b) An action brought under this section shall not be dismissed for failure to comply with any previously applicable statute of limitations.

Applied to Plaintiff, this section prevents his case from being dismissed on the grounds that it fails to comply with the previously applicable statute of limitations (two years under California Civil Procedure Code § 335.1) because as of January 1, 2016, the enlarged, ten-year statute of limitations under § 354.8 applies. Subsection (b) thus codifies the background principle that prospective application of a statute of limitations includes pre-enactment claims for which the applicable statute of limitations has not expired. The California Legislature has deployed similar

25cv3651

language in other amendments to statutes of limitations as a "savings clause" to ensure the maintenance of these background principles. *See Quarry v. Doe I*, 272 P.3d 977, 993-94 (Cal. 2012). Read with § 354.8(e), subsection (b) limits application of this rule only to those claims that were not time-barred on January 1, 2016.

If § 354.8(e) were read as Comstock proposes—to prohibit prospective application to pending claims—then § 354.8(b) would be rendered at best entirely redundant and at worst entirely meaningless. For claims that accrue on or after January 1, 2016, § 354.8's ten-year statute of limitations applies. If there were any doubt about this, subsection (e) codifies the effective date. Section 354.8(b) would be purely redundant with subsection (e) if it is read to simply indicate, yet again, that the ten-year statute of limitations applies.

The language of subsection (b) forecloses even a redundant reading, which already is heavily disfavored. *People v. Chadd*, 621 P.2d 837, 841 (Cal. 1981). Recall that subsection (b) states that claims brought under 354.8 "shall not be dismissed for failure to comply with any *previously applicable* statute of limitations." Cal. Civ. Proc. Code § 354.8 (emphasis added). For claims that accrue on or after January 1, 2016, there is no "previously applicable" limitations statute. There is only the present ten-year statute of limitations under § 354.8. On the other hand, claims that accrued prior to January 1, 2016, of course, do have "previously applicable" limitations statutes. But if no claims that accrued prior to January 1, 2016, are subject to § 354.8, as Defendant contends, then subsection (b) never has any application. Defendant's reading of subsection (e) would therefore render subsection (b) entirely meaningless, a result contrary to fundamental tenets of statutory interpretation. *See Garcia v. McCutchen*, 940 P.2d 906, 911 (Cal. 1997) ("'When two statutes touch upon a common subject,' we must construe them 'in reference to each other, so as to "harmonize the two in such a way that no part of either becomes surplusage."'" (quoting *DeVita v. Napa*, 889 P.2d 1019, 1028 (Cal.

24

25cv3651

1995))).

Further, unlike the statutory scheme in *Russell v. United States*, subsection (e) does not even mention nor allude to pending claims. Far from having an "obvious design" to preclude pending claims, subsection (e) is more reasonably read to codify the background rule precluding retroactive application. *Mudd*, 183 P.2d at 15.

Codifying the background principles on retroactive and prospective application of a statute of limitations is sensible in light of litigants' attempts to circumvent them. *See Moreno v. Porterville*, No. 1:21-cv-00865-JLT-BAM, 2022 WL 14128245, at *3-*5 (E.D. Cal. Oct. 24, 2022). And by the same token, it is not unheard of for courts to incorrectly rule on these principles in the absence of statutory direction. *See Andonagui*, 27 Cal. Rptr. 3d at 149-50 (federal case finding that plaintiff did not benefit from enlarged limitations period because claim accrued pre-enactment was wrongly decided (examining *Abreu v. Ramirez*, 284 F. Supp. 2d 1250 (C.D. Cal. 2003))).

Properly applied, § 354.8 extended the statute of limitations for Plaintiff's claims from two years to ten years because his claims were not time-barred at the time of enactment on January 1, 2016, and because § 354.8 does not expressly except prospective application.

**IV.    In the Alternative, Plaintiff Requests Leave to Amend His Complaint.**

In the event the Court finds any of Plaintiff's allegations insufficient, Plaintiff requests leave to amend. *See Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003); Fed. R. Civ. Proc. 15(a). Dismissal without leave to amend is proper only in "extraordinary cases." *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003) (citation omitted).

**CONCLUSION**

In light of the foregoing, Plaintiff respectfully requests that Comstock's motion to dismiss should be denied in its entirety.

25

Dated: May 11, 2026

Respectfully submitted,

By: /s/ Daniel McLaughlin

Daniel McLaughlin (SBN: 315326)
Cole Newcomb (SBN: 365455)
CENTER FOR JUSTICE
AND ACCOUNTABILITY
268 Bush Street #3432
San Francisco, CA 94104
Tel: (415) 544-0444

*Attorneys for Plaintiff*

26

25cv3651

I hereby certify that on May 11, 2026, a true and correct copy of **Plaintiff's Opposition to Defendant Comstock's Motion to Dismiss** was served on Defendant Comstock by U.S. mail as follows:

Dale Comstock

200 Friars Hill Drive, Apt. 201

Panama City Beach, FL 32407

Dated: May 11, 2026

Daniel McLaughlin (SBN: 315326)
dmclaughlin@cja.org
CENTER FOR JUSTICE AND
ACCOUNTABILITY
268 Bush St #3432
San Francisco, CA 94104
(415) 544-0444

1

25cv3651